FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS 2 PM 12: 01

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| Plaintiff ) | |
| ) | |
| v ) | CASE NO. 1:21 CR. 100 35-GAO |
| ) | |
| FAITH NEWTON, ) | |
| Defendant ) | |
| ) | |

### WRIT OF HABEUS CORPUS - 28 U.S.C 2241 (A)(3)

Now into court comes the Defendant Faith Newton, in her Pro Se capacity, in the above cause moves the Honorable Court to make judicial notice of all facts raised with said motion and now asks the court to use its supervisory powers to release her from detention and dismiss her criminal indictment for violations of constitutional rights including Fifth Amendment right to due process Discovery Violation, Equal protection clause violation, First Amendment violation of the Speedy Trial Act, violation of the process, violations of the Fourth Amendment through the use of evidence obtained without a legal warrant, and violation of the Sixth Amendment for failure of the government to provide authenticated discovery. 28 U.S.C 2241(a)(3) gives district court's jurisdiction to grant a writ of Habeas Corpus to individual in custody in violation of constitution or laws or treaties of the United States. *Jones V. Cunningham 371,U.S 236*

### ARGUMENT

The Fifth Amendment of the United States Constitution (The Constitution) states that no person shall be deprived of liberty without due process of law. **It is the manifest duty of courts to vindicate those guarantees and to accomplish that it is essential that all relevant and admissible evidence be produced.** The Supreme Court has written freedom from custody, detention, or other form of physical restraints lies at the heart of the liberty clause protection. Due Process has not been afforded to the Defendant.

**DISCOVERY VIOLATION   RULE 16 (a) of the Federal Rules of Criminal Procedure**

Pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure, Faith Newton, the defendant in this action, **detained pre-trial without bond**, **NO trial date** and, **also denied discovery**

pg. 1

disclosure for purposes of inspection and/or copying and/or photographing <u>patient medical records</u> cited by the government as being a key part of the <u>criminal indictment against her.</u>

The government denies having, in its possession, <u>printed</u> medical records. These medical records are the crux of the government's case against the Defendant and their failure to produce hard copies all the while opposing the release of the Defendant from detention to view internet based records violates both the conscience, and the law.

The Defendant, has in her possession, evidence to support the fact that patient files presented to the Grand Jury were derived from records stolen from her husband's home health business by a previous employee in violation of both client privacy and HIPAA laws and were inadmissible. **Further, the government did not log in to lawfully obtained electronic healthcare medical records until November 15th 2021, nearly eleven months after the Defendants detention, placing further evidence on the fact that the case against her is based on supposed evidence that was unlawfully obtained and is inadmissible.** <u>Because the Defendant can show that the government did not legally have access to patient records until after her arrest, the government could not have legally obtained patient data to present to a Grand Jury.</u> Under the rules of evidence, the government would not have been able to use "live" internet based electronic health records to indict her. The Defendant has been detained for more than a year and the government has failed to produce discovery in violation of the Federal Rules of Criminal Procedure. <u>Further, the Defendant has been presented by the government through discovery with evidence that shows that patient data was illegally obtained from her place of business by a disgruntled employee in violation of patient protections under privacy Act and HIPAA laws.</u> The same disgruntled employee presented these unlawfully obtained patient medical records to file a $10 Million Dollar civil action against the Defendant and stands to potentially gain $10 Million Dollars if the Defendant is framed and convicted. The unlawfully obtained patient data and medical records stolen by a disgruntled employee without patient permission is also inadmissible in the civil action against the Defendant, a point which will also likely result in the dismissal of the civil suit.

<u>Mr. Bailey, the Defendant's defense attorney has stated that he has discovery **(2million pages)** in his possession, but tells the Defendant it is on the internet in "cloud based" applications and **refuses** to print the material and save scanned copies to an electronic format so it can be viewed by the Defendant. Defense Counsel has not explained why they refuse to do this and has contributed to the extended detention of the Defendant without discovery by continuously attempting to obtain internet access for the Defendant at the maximum security detention center where she is being held as a pre-trial detainee despite already having been told that internet access for detainees in maximum security, despite her pretrial status, is not possible. This is occurring despite the requirement of the need for hardcopies to be presented to jurors and bate stamped for use as evidence at trial and despite internet based medical records being available for download to an acceptable electronic format.</u>

**The Defendant can show, per the case docket, that the government did not obtain lawful access to patient medical record data until about May 2021 . Defense Counsel did not access legally obtained medical records until November 15th 2021, eleven months after the Defendant was remanded to custody.** Despite not having crucial evidence in her possession, Defense Counsel continued to waive the Defendant's right to Speedy Trial at multiple status conferences <u>without her knowledge or consent</u> during the period from January 31, 2021 to November 22, 2021, tolling the countable days under the Speedy Trial Act, contributing to the unlawful detention of the Defendant.  During this time, Defense Counsel also waived her appearance at these hearings over the Defendant's strong objections, and even informed the Defendant that she was "*not allowed to attend these hearings… that they are just for the Judge, prosecution, and defense counsel.*"  Defense Counsel has told the Defendant that this waiver was so that they could prepare for trial, however the Defendant asserts that Defense Counsel was not provided with discovery until November 2021 having no evidence to review or "prepare."  Ultimately, Defense Counsel waived their client's right to speedy trial for eleven (11) months, while she was detained in a maximum security detention center, with no ability to even begin trial preparation because they had no evidence/discovery at that time.  According to the case docket and to a letter sent by Mr. Brad Bailey to the Defendant dated February 17, 2022, the Defendant's case has been continued from January 5, 2021 to March 4, 2022, excluded by Judge Kelly "in the interests of justice," causing a thirteen month purposeful delay, ultimately resulting in no resolution.  Defense Counsel has also previously filed a Motion to Withdraw as Defendant's Counsel (denied by Judge Kelly), because of letters the Defendant has sent to a Judge Wolf in Federal Court in the District of Massachusetts (Boston) to attempt to bring light to the issues raised in this petition, in violation of her right to access court.  In a letter dated February 14, 2022 sent to the Defendant by her Counsel, Mr. Brad Bailey and Mr. Raymond Sayeg Jr., Counsel tells the Defendant, "… despite Judge Kelly's explicit warnings and our follow-up breakout session with you about writing such letters, you once again set forth your thoughts and made statements against your interests" where the Defendant also interprets the Judge's request to be a possible attempt to prevent her from accessing court to disclose the severe injustice under which she has been unlawfully detained.  (See Exhibit 2)

Defense Council, Mr. Brad Bailey, has hired another attorney, Mr. Raymond Sayeg Jr., to assist in NEWTON'S defense. Mr. Bailey has failed to provide Ms. Newton with the written agreement between Mr. Bailey and Mr. Sayeg and, as such, cannot be certain that attorney-client privilege has not been breached.  Further, Ms. Newton questions whether Attorney Sayeg's involvement in her criminal case is a potential conflict of interest as he was previously hired by NEWTON, nearly six (6) years ago, to defend her in the civil suit filed against her.  **Attorney Sayeg now represents the Defendant in both her criminal case and civil case, where Defendant assets that both cases were filed based on unlawfully obtained patient medical records made clear by both statements and evidence provided by the AUSA.**  Attorney Sayeg has failed to raise this issue, in the form of a motion, in either case. (See next paragraph).

From the referenced case docket, the Joint Final Status Conference November 22,2021: *"The information on the laptop was download by the government litigation technology department loaded the laptop with discovery with index and the pertinent software November 3rd with respect to AXXESS CLOUD DATABASE. It is the government understanding that all counsel including Arbor Company had access to the materials in May 2021 when director of technical operation emailed all parties informing them that the database was ready and confirming the list of log ins that were requested. The government received access to the database later that day. September –the defense attorney had not received login the government contacted AXXESS TECHNOLOGY and login were emailed to all the parties on October 13 th.  November 13 the counsel asked the government to contact to AXXESS TECHNOLOGY reset that login the link had expired the login was reset on November 15 2021.  November 3 the government gave counsel list of twenty of patient list* that *the government may use to prove their case at trial."*

**The evidence produced by the government on a hard drive and provided to the Defendant with the accompanying laptop computer needed to view it, on November 8, 2021, shows the government received the information relied upon by them to indict her on 01/02/2015 and modified that information on 06/19/2015, four days before a meeting between the private parties and their attorneys who filed a civil suit against the Defendant and Special Agent Janet Hernandez of the FBI. (See paragraph below). This information could not have been lawfully obtained as the government, by its own admission on the docket, states it did not have ability to access electronic patient records kept by AXXESS TECHNOLOGY DATA BASE until at least about May 2021 or November 15th 2021.  Agent Janet Hernandez however, having participated in a meeting to discuss a civil suit against the Defendant, held on 6/23/2015, saw and discussed the unlawfully obtained patient data. NEWTON questions the FBI's participation in a civil action against her utilizing unlawfully obtained patient data stolen from her place of business and later used to indict her on current charges.**  The patient data provided to the defendant, upon examination of the hard drive provided to defendant at Donald Wyatt Detention Center, will show that such data was unlawfully obtained by the government, **proving that the government relied upon manufactured and  unlawfully obtained information,** that the government knew was illegally obtained and not admissible to indict the Defendant. **(See Bate Stamps USAO 00607551 – 00607559).**

**The following list of bate stamped documents were unlawfully obtained in from October- December 2014, received by the government on 1/2/2015 and were knowingly used by the government to unlawfully indict and detained the Defendant:**

USAO – 00608172:  Plan of care
USAO – 00608255: Employees List
Targeted employees list:  USAO -00608264
AHCS Complaint / probable cause USAO – 00608135, USAO – 00608148

PATIENT ROSTER: USAO-00608150 – **This list includes the names of the 20 patients given to the Defense to be used by the government at trial. This list is from 2012 – 2014, despite having no warrants to obtain this data legally.**
EMPLOYEE ROSTER: USAO-00608149 -
EMPLOYEE OVERTIME: USAO - 00608151

**LAW ENFORCEMENT MEETING ON 6/23/2015** – <u>**FBI Agent Janette Hernandez attended a meeting to discuss a civil lawsuit against the health care (ARBOR HOMECARE SERVISES) company owned by the Defendant's spouse.** See **USAO 00607551 – 00607559.**</u> **The Defendant asserts that the FBI's presence at this civil lawsuit meeting demonstrates that a conspiracy to target the Defendant for a federal criminal charge using malicious prosecution may be the mechanism by which the Defendant will be forced to pay $10 Million through the pending civil suit. FBI investigation of a criminal charge should have no involvement with a civil lawsuit where disgruntled employees with their attorney seek to obtain funding. The Defendant's guilt would entitle disgruntled employees to payment of $10 Million Dollars. Ms. Hernandez's presence at this meeting may have been criminal. Minimally, it was inappropriate and improper and there was no legitimate purpose for the presence of the FBI at discussions of a civil suit.**

Defense Counsel has not raised issue with the government about how they used internet based records to present to the **Grand Jury for indictment singed by "Foreman Donald B Jacobs"** and has refused to raise this issue with the court. This becomes even more vital given that it is the Defendant's position that the entire case against her, including indictment, statements, and arguments made by the prosecution at hearings have been taken (many times verbatim) directly from another federal case from Maryland, *United States v Bikundi (2014 – 2016)* and where other evidence of these alleged forgeries has been placed on record through letters mailed to Judge Kelly (Magistrate Judge for NEWTON) and Judge Wolf in Boston (due to track record for upholding constitutional rights) and filed as part of the docket in this case. Exhibit 2

The government also filed a "protective order" for discovery on March 1st 2021. Despite multiple requests and meetings, Defense Counsel will not discuss the meaning or purpose of a "protective order" nor will they discuss what it means to the Defendant relative to accessing discovery for participation in her own defense. The Defendant raises the question, "How can alleged evidence against me be legally "protected" so that I cannot review it and prepare my defense?" The Defendant asserts that she has been targeted for a scheme under the guise of federal law, unlawfully charged with a crime through a forged indictment, framed through the use of forged and fraudulently obtained discovery, and is being unlawfully detained, and denied access to Court by her own Defense Counsel. Further, Ms. Newton, although a pre-trial detainee and innocent until proven guilty, is being held in a maximum security prison. The circumstances under which the Defendant finds herself detained is the epitome of a miscarriage of justice and the

circumstances for which the Writ of Habeas Corpus was instituted. The Defendant seeks justice through this motion and all the power it affords this Honorable Court.

**In case of delayed disclosure, the critical inquiry is not why disclosure was delayed but whether the tardiness prevented defense counsel from employing the material to good effect. The United States court of appeal for the First circuit has counseled that in a case of delayed disclosure, a district court must determine whether the failure to supply the information in a seasonable fashion <u>caused the defense to change its trial strategy</u>. The United States Supreme Court decision in Brady V. Maryland makes it clear that the lack of bad faith by the prosecution does not excuse withholding critically needed material evidence.**

The Defendant did not receive ANY discovery at all until November 8th 2021, where according to the prosecution, *"only a tiny fraction of discovery, 1% of 2.1 million pages"* was presented. The failure of the government to produce discovery or support release from detention is requiring the Defense to change its strategy by moving forward without the Defendant's participation in her own defense relative to patient records because they are not accessible. Importantly, NEWTON is the registered nurse who documented many of the patient files in question (though not all) and her input in vital as intent can only be shown through the eyes of the writer. Despite having some files documented by registered nurses other than Ms. Newton, she remains the only individual charged as a result of documentation. Though <u>Ms. Newton has been accused of being the individual who documented many of the patient files at issue, this documentation is being withheld from her by her inability to view discovery, and NEWTON is being denied a fair trial as a result.</u> Failure to produce these records in electronic format that is accessible to the Defendant also resulted in the Defendant being advised against taking the stand in her own defense, against her wishes to do so, because the defense cannot prepare her testimony regarding these records.

**The Defendant asserts that the "cloud based" patient data that is being withheld from her is <u>exculpatory</u> in nature and will provide clear contradiction to the government's indictment against her.** <u>The Defendant believes this fact is playing a major role in the government's failure to provide access to this information despite their claims.</u>

The government's violation of the discovery D.Mass R. 116.2 (B)(1)(A) is egregious outrageous, severe, deliberate and unfairly prejudicial to the defendant. D.Mass R. 116.2 (B)(1)(A) requires the U.S Government to turn over, within twenty-eight days of an indictment any information that would tend directly to negate a defendant' s guilt concerning any count in the indictment or information. In *Brady V. Maryland*, the United States Supreme Court held that suppression by the prosecution of evidence favorable to an accused upon request, violates due process where the evidence material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution failure to turn exculpatory statements over the defense in timely fashion violates *Brady*. Minimally, an evidentiary hearing is required to show cause for the Defendant's assertion that electronic patient records will exonerate her. <u>Defense Counsel has refused to file a Motion</u>

to request this vital evidentiary hearing, which the Defendant asserts will result in her release from detention as there exists clear evidence to directly contradict the indictment against her, information presented by the prosecution, and arguments made during hearings by the AUSA.

Federal district court has broad discretion to redress discovery violation in light of their seriousness and any prejudice occasioned defendant. The court also has discretion to shape the remedy based on the particular circumstances of the case and the remedies applied by court in a case of discovery violation will vary in proportion to the seriousness of the violation and the amount of prejudice suffered by the defendant in each case (*Unite State V diabate, 90F suup 2d 140*). The Defendant has endured multiple and continuous violations of her civil and Constitutional Rights. She has been detained, as an innocent person, for more than one year, has been denied access to court, has had both criminal and civil actions filed against her utilizing unlawfully obtained and inadmissible evidence at the prosecutors own testimony during a status conference hearing where the government admits to having received logins from the electronic record company in May 2021, but where indictment and civil suits occurred much earlier, and has suffered immensely due to ineffective counsel. The Defendant asks this court for immediate release from detention and for dismissal of the indictment against her.

The government opposes each motion for Defendant's release stating that *"…I'm aware of no case holding that the constitution requires that a defendant represented by lawyer must personally see all discovery that the government discloses to defense counsel or even the discovery that he asked"* leaving the Defendant no option but to proceed Pro Se without an attorney or accept that she will not receive a fair trial by being denied the right to participate in her own defense. Either option is a violation of the Defendant's Constitutional Rights.

**Release from detention to prepare her defense has also been denied the Defendant on several occasions. As of the date of this writing, the Defendant has been denied the right to participate in her own defense and is being unlawfully detained, in violation of the Fifth Amendment and the court has issued prejudicial rulings against defendant release based on Discrimination due to National Origin in violation of the Fourteenth Amendment of the United States.**

The Defendant is being compelled, through the use and application of continued detention, to disclose foreign financial assets and holdings in violation of her Fifth Amendment right to not incriminate herself. The government obtained knowledge of the Defendant's foreign assets through unlawful search and seizure by the Joint Terrorism Task Force at Logan International Airport at the request of the AUSA. A warrant was not obtained prior to the AUSA's request sent to the task force to obtain the documents. **(See Exhibit 3)** Further, the Defendant was not charged in 2017 at the time of the document seizure and had no obligation to report that she was leaving the United State to visit Kenya. The Defendant asserts that she must have been under illegal surveillance and/or wiretap for the government to know that she planned to travel and to have knowledge of the exact dates and time that she would return home to the United

States. The Defendant asserts that documents were seized and cell phone data copied in to disc and not limited to text messages that were used in the indictment, upon returning to the United States from a visit to Kenya on multiple occasions 5/03/2017 and again on 07/30/2017. As part of the illegal seizure of bank statements from Kenyan assets from the Defendant's luggage on 7/30/17, the Defendant was issued a "seizure slip" from Border Patrol Agents stating that documents were seized from her luggage and they will be mailed to her. Additionally, a report written by Special Agent Benjamin Wallace from the FBI, dated 8/10/17 (Bate Stamp: USAO – 00607361) **(Exhibit 4),** states that *"Officer BELMARSH (Border Patrol) placed these documents in a sealed CBP evidence bag and provided them to SA Benjamin Wallace. On 7/31/17, SA Wallace placed these documents as evidence with the FBI Boston Evidence Control Room."* The Defendant asserts that at some point approximately a year later in 2018, after repeatedly requesting information and proof of Kenyan assets, presumably as part of a criminal investigation of the Defendant, and presumably after obtaining a legal warrant that has never surfaced, Ms. Newton instructed her civil attorney at the time, Mr. Raymond Sayeg Jr. (now also participating in her criminal defense) to contact Border Patrol and demand they release the documents they seized at the airport to her attorney. A day later, Attorney Sayeg notified the Defendant that he had obtained the documents from Border Patrol. The Defendant assumed that he would forward these documents to Rachel Hermani as they were obtained at her repeated request. The Defendant is unsure how these documents were obtained so quickly by Attorney Sayeg from Border Patrol Agents, had no knowledge of FBI involvement in the document seizure (See the FBI Investigation Report dated 8/10/17 (Bate Stamp: USAO – 00607361), and cannot explain how Attorney Sayeg received documents from Border Patrol that were supposedly taken into FBI custody on the same day of seizure, a year later. If the documents were, in fact, taken into FBI custody and secured in the FBI Boston Evidence Control Room as stated in the attached report (Exhibit 4), Ms. Newton cannot say how the documents came into the possession of her civil and now civil/criminal defense attorney, Mr. Sayeg in 2018 or why he would provide them to AUSA Hermani. The Defendant asserts that she was never told she was under criminal investigation nor was she ever provided with a target letter. In fact, the Defendant was never aware of FBI involvement in the seizure of documents pertaining to Kenyan assets until receiving a copy of the FBI report in discovery in November 2021. The Defendant asserts that the search and seizure took place at the request of AUSA Hermani without a warrant, and with her full knowledge that the search and seizure was unlawful.

The very existence of foreign assets is being used against the Defendant (see indictment United States v Faith Newton) and the government had every opportunity to legally investigate these assets prior to indictment and elected not to legally investigate, but to authorize illegal search and seizure of documents relating to foreign assets, and to conspire with JTTT for an illegal search of the Defendant's luggage upon arrival to the U.S. from a visit to Kenya.

**The government continues to state to the court that Ms. Newton's failure to provide information on these assets is grounds for detention** (i.e. flight risk). **Exhibit 4**, FBI report written by Mr. Wallace, states that said documents are in the possession of the FBI. Attorney Sayeg, Ms.

Newton's civil/criminal attorney can attest to having obtained said documents by the Border Patrol and subsequently providing them to AUSA Hermani, upon her request, presumably by warrant, in 2018. NEWTON is unsure why Attorney Sayeg has failed to notify the court of his previous actions given that the issue appears to be the reason for her continued detention. Importantly, the Defendant is willing to state under oath that the documents being requested can only be obtained in Kenya. The banking system in Kenya does not allow for electronic statements of the like. The Defendant's trip to Kenya in July 2017 was specifically to obtain the banking statements and documents requested, however they were seized at the airport immediately upon her arrival to the United States rendering her unable to personally provide them to the AUSA. Given that the Defendant is currently under indictment and detained, she is unable to go to Kenya to obtain other copies, rendering compliance with the request for documents that is resulting in her continued detention impossible. **Therefore, Ms. Newton again asserts her Fifth Amendment right against self-incrimination. Attorney Brad Bailey has refused to raise the Defendant's assertion of Fifth Amendment privilege at all previous detention hearings**. Prejudice against such disclosure under the circumstance, and the court under the Rule of Law, should not assume guilt by the Defendant's exercise of her Fifth Amendment right against self- incrimination and must accept her Fifth Amendment plea relative to the issue of detention.

**The Fourteenth Amendment of the United States**: Citizens of the United States, all persons born or naturalized in the United States and subjects to the jurisdiction there of, are citizens of the United States and of the state where they reside. No state shall make or enforce any law which shall abridge in privilege or immunities of citizens of the United States. No state shall deprive any person of life liberty or property without due process of the law nor deny to any person within its Jurisdiction the equal protection of the law.

### Quotes from the government as they pertain to Ms. Newton's release:

"AUSA "She regularly travel to Kenya and owns property businesses and bank accounts in Kenya. The government know this though text massages the defendant has been on detention for more than a year. " *"She continues to refuse to disclose her holdings here and abroad, notwithstanding the significance of those holding to this very issue, the court may infer that Newton chooses not to report this information to conceal the depth of her connections to Kenya should she be given an opportunity to abscond. The government has only to prove risk of flight by a preponderance of evidence. ""It is the government's position that the defendant must disclose her full financial holdings including those in Kenya before the court can consider her release on any amount of a secured bond it has now been over almost a year since the defendant's arrest and she has steadfastly refused to disclose her assets in Kenya, despite the fact that there are financial records, most of which have already been produced in discovery."*

Kenyan ties are being used by the government to "muddy the waters" against Ms. Newton in an attempt to persuade the court to consider her a serious flight risk. Ms. Newton is a United States Citizen, entitled to all rights and privileges thereof. Failure to recognize her citizenship because she is a naturalized citizen violates the Fourteenth Amendment of the Constitution and is discriminatory based on national origin. After becoming a legal citizen, Ms. Newton's place of birth is irrelevant. Her citizenship stands and cannot be taken away from her. To deny bond because of national origin violates both conscience and the law.

### SIX AMENDEMENT SPEEDY TRIAL CONSTITUTIONAL RIGHTS VIOLATION

**The Speedy Trial Act does not permit unlimited delays and the trial court has the responsibility to ensure that the length of excludable continuance is reasonably related to the needs of the case. The right to a speedy trial belongs not only to the defendant but to society as well. <u>Accordingly, regardless of the willingness of counsel to accept pretrial delay, the Speed Trial Act assigns district courts an independent responsibility to protect both defendant and the public's strong interest in the timely administration of Justice. Therefore it is understood that the ultimate responsibility for ruling upon pretrial motions in a timely manner, rests with the Court.</u>**

The nature of the speedy trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted or waived but that fact does not argue for placing the burden of protecting the right solely on defendant. A defendant has no duty to bring himself to trial. The government has the duty, as well as the duty of insuring that the trial is consistent with due process.

A continuous, excludable delay from February 4, 2021 to March 4, 2022, a total of 13 months, while the Defendant remains detained in a maximum security facility without discovery, is excessive punishment. Defense Counsel, although agreeing to this waiver, has done so without the knowledge or consent of Ms. Newton. Month after month, Ms. Newton encouraged her attorneys to continue to file motions to release her, without ever discussing the Speedy Trial Act with her. Upon discovering the Speedy Trial Act due to her own research, Defense Counsel did not tell Ms. Newton that she, by their doing, had waived her right for many months. Only after receiving a copy of the docket from a family member (SON) thought text massage did the Defendant become aware that her defense attorneys had waived her right to Speedy Trial without discovery and waived her right to appear at all status conferences without her knowledge or consent. Upon demanding to attend a status conference to be held in November, 22, 2021. Ms. Newton was told by Defense Counsel that she cannot attend and warned.

### JURISDICTION

The Defendant raises the question of Federal Jurisdiction and moves to dismiss the indictment against her. Arbor Home Care Service Co.. for whom the Defendant was an employee and NOT

an owner, utilized a third-party billing company for all billing. The Defendant was NOT involved in the hiring or contracting of this third-party billing company and no information from this company was obtained by the government despite the fact that the third-party billing company performed all services related to the billing of all patients, including those receiving Medicaid. No information from this company about how and/or when billing was performed is included in the discovery provided to the Defendant by the government.

It is the understanding of the Defendant that the majority of patients were covered under Medicaid, a Massachusetts state funded healthcare program, and NOT Medicare. The government has not provided ANY evidence as to how it substantiates a charge asserting a one-hundred million dollar ($100,000,000) loss. Additionally, it is the understanding of the Defendant that at the time the company closed, Medicaid performed an automatic billing review and found only a small overpayment to Arbor Home Care of only nine thousand dollars ($9,000.00), all of which was promptly returned to Medicaid upon closure of the company in 2017, in full compliance with all laws, rules, and regulations. The Defendant asserts that after Medicaid found no evidence of fraud, disgruntled employees continued to meet attorneys for the purpose of filing a civil suit against the Defendant personally and Arbor Home Care, the company where she was employed, and where Special Agent Janet Hernandez participated In the meeting held on 6/23/2015. Only after Medicaid closed the books on Arbor Home Care finding no fraud did the federal government take up the case using documents unlawfully obtained by disgruntled employees to indict and detain the Defendant.

The government has stated in its Opposition to a Motion to Release, "..That it intends to prove its case by pointing out that Arbor Homecare Services billed Medicare and Medicaid for services that were medically unnecessary visits and that visits were not performed. <u>The government claims that visits were billed even though there was no Plan of Care signed by a **"patient"** and visits were billed where patient never knew they were enrolled." The Defendant states clearly for the record that a **Plan of Care is NEVER signed by the patient** and believes this assertion was lifted from the **United States v. Bikundi case no; (1-14 cr 00030-BAH-1)** case where the patients signed timesheets so that services could be billed. The government has made no assertions about timesheets related to Arbor Home Care, the company in question, nor has the company or any of its Directors been charged in this case</u> *(See below Rule of Medicare billing)*

## The Rules of Medicare for billing requirement for reimbursement for home healthcare services

*"Medicare reimburses providers for home health care services, if a particular patient is (1) eligible for Medicare and (2) meets certain requirements. Those requirements include, inter alia, that the patient **is "homebound" under certifying doctor's care and in need skilled services***

*certifying a patient for home health care begins with an initial referral. Which typically originates with the patient primary care physician, next a nurse goes to the patient's home to access if he/she is "homebound "completing an outcome and assessment information set (OASIS). From the (OASIS) assessment, the nurse develops a plan of care on a form known as "485" for the prescribing physician for review,* **only a physician can approve a "485" Plan of care. Physicians are expected to review the forms to ensure they are accurate**. *These forms, as well as face to face addendum certifying the nurse met with the patient, are then routed to Medicare. This process permits payments for one 60 day episodes. Medicare determines how much will be paid for each episode based, in part on the patient diagnosis. Each diagnosis has a corresponding code delivered from the international statistical classification of diseases and related health problem 9th revision (an IDC-9 code) reimbursements are higher for some diagnoses than others. So called case-mix diagnosis such as rheumatoid arthritis, cerebralcerebral ,lipidosis and low vision, receive higher payments than other comparatively simpler diagnosis. As a result in higher Medicare reimbursement. United States v Nora* 988 F. 3d 823

**The government, without independent investigation, targeted me for a malicious and false prosecution. This criminal conduct is a severe miscarriage of justice and a thorough investigation of my claims should be immediately commenced. I have been detained in jail for more than a year under these forged charges and remain detained. I have been denied any way to defend myself including meeting and communicating with my attorneys as in-person visits and legal calls have been suspended at Donald Wyatt Detention Facility due to staffing issues related to COVID-19.**

### Fourth Amendment violation (claim)

**Fourth Amendment** Requires that searches and seizures be reasonable and establishes certain requirements for the issuance of warrants. Among these is the requirement, that any warrant, particularly describe the place to be searched and the persons or things to be seized. Both the documents relating to foreign assets owned by the Defendant and her husband and cell phone data obtained by the ~~Defendants by the~~ Border Patrol at the request of AUSA Hermani were requested without the existence of a warrant or court order in violation of the Defendant's Fourth Amendment Rights. Further, the government continues to request these materials and has continuously opposed the release of the Defendant for failure to produce these materials despite the fact that a Report by the FBI, in possession of AUSA Hermani, as provided to the Defendant in her discovery, clearly shows that this information is in the possession of the government and has been since its seizure. (EXBIT 4)

### Inconsistencies in the record of fact:

- The order of detention by Judge O'Tool states that government showed evidence of fraud in the amount of $40 million , not $100 million as asserted by the government.
- The detention order by Judge O'Tool states incorrectly states that both defendant and my husband were owners of the company (Arbor Home Care) and that defendant received $40 million dollars from the company. The Judge was led by the government to believe that Ms. Newton was an owner of the company despite being in possession of clear evidence that shows that she did NOT own the company in question at any time. A quick review of ownership records will support the Defendant's position that she did not own Arbor Home Care at any time. The contracts from both Medicare and Medicaid, in the possession of the government and provided to the Defendant as part of discovery, show that she was not an owner. The Defendant was told by Defense Counsel that if she continues to state that she did not own the company (Arbor Health Care) *"that her husband would be charged and her minor child would be left with no parent."* Counsel is using fear and intimidation to silence the Defendant from stating the obvious truth.
- The Defendant was told by Defense Counsel that if she discloses foreign assets, that she will be charged with International Money Laundering. The Defendant is being punished (e.g. detained) for exercising her Fifth Amendment right to not incriminate herself. Ms. Newton has the right to remain silent and this right should not be the cause of her detention. And should not be violated
- Judge O'Tool potentially violated the Defendant's Fifth Amendment Right by including the statement *"she has declined to provide information about assets in Kenya"* in his detention findings per the written Detention Order dated July 8, 2021. Ms. Newton is unsure if Judge O'Tool was made aware of her assertion of her Fifth Amendment right by Defense Counsel at the time or since.

- The Defendant asserts that she was not, at any time, mirandized as is required by law. The Defendant was arrested by Border Protection Agents at Logan airport and transferred to the custody of the FBI, specifically Special Agent (Janet Hernandez) and brought immediately to Donald Wyatt Detention Center. (Ms. Newton has, in her possession, as provided to her by the government in discovery, a Report of Conversation, drafted by SA Janet Hernandez and dated February 3, 2021, three days after Ms. Newton's arrest and one day before her detention hearing, stating *"Following Faith Newton's arrest and advise of Miranda rights..."* Having been arrested by Border Protection, Ms. Newton questions why SA Hernandez would raise the reading of her Miranda rights in this report and how SA Hernandez could be sure that the Border Patrol read Ms. Newton her Miranda rights. SA Hernandez specifically states, "Following Faith Newton's arrest and advise of Miranda rights..." suggesting that SA Hernandez did not personally Mirandize the Defendant

however no evidence of being advised of her Miranda rights by Border Protection is contained in the discovery provided to Ms. Newton. The same document also shows a case number of 1-15-00040-9, a number different from the Defendant's case number but familiar to the Defendant as being the same case number written on all documents that the Defendant alleges to be fraudulent/forgeries.

The Defendant asserts the following documents, provided to her by the government as part of the limited discovery, are fraudulent/forgeries and/or were fraudulently obtained:
- For review of the supposed FBI/AUSA witness statements in United States v Newton, please see government evidence with Bate Stamp numbers: USAO-0060715 to USAO-0060719.
  - Bate Stamp numbers USAO-00607409 to USAO 00607414 include interviews about falsifying documents in United States v Newton. These mirror witness testimony in the United States v Bikundi (see attached testimony by James Mbide and others).
  - Bate Stamp numbers USAO-00607431, USAO-00607432, USAO-00607575, USAO-00607576 are supposedly statements taken by the FBI, by telephone, of a "witness," however, the woman who supposedly gave these telephone statements had undergone significant brain surgery to remove a tumor and her attorney stated she could not be interviewed as a result of undergoing treatment and surgery for brain tumor.
  - Other examples of blatant forgery to mirror Bikundi include USAO-00607568, USAO- 00607574, USAO-00607501, USAO-00607504, USAO-00607365, and USAO-00607366

Because the indictment contains false statements made intentionally with reckless disregard for the truth and second that finding of The Defendant asserts that probable cause for her arrest would not have been made without the use of unlawfully obtained documents and false statements made by the FBI and others. Omission of material facts are treated the same as affirmative falsehoods. A literally true affidavit can be intentionally misleading if it deliberately omitted material facts, which when included, would defeat the probable cause showing and thus render false the original literally true affidavit. *United States V. Hallman, 2021*

The conditions where I am held are harsh. At Wyatt, I contracted COVID because the facility did not quarantine COVID positive female detainees and I was unable to see a physician as a licensed physician is not available for female detainees. At times, due to staffing shortages, I am locked down in a 6 by 8 foot cell for as long as 23 hours per day. Female detainees are generally not allowed to leave the housing pod an I have not seen the sky or sun for 13 [ten] months as the female detainee recreation yard is completely enclosed in concrete and is approximately only 16 steps long and 9 steps wide. (Exhibits 5)

We are locked in at night at 10:50pm until 7:30am and phones and messaging apps stop working at 11pm. Video visits are only allowed in the dayroom during recreation hours. All visits are non-contact visits.

The government, without independent investigation, targeted the Defendant for a malicious and false prosecution. This criminal conduct is a severe miscarriage of justice and a thorough investigation of the above claims should be immediately commenced. The Defendant is asking for relief in the form of release from detention and dismissal of the indictment against her.

*"Innocent are not afraid of Law"*

**Therefore by this been said for the interest of justice, The defendant request for immediate emergency in person hearing for above said claims.in this honorable court . United State District Court for the District of Massachussetts**

Respectfully Submitted
By the Defendant

*[signature]* - Feb -28- 2022

Faith Newton
Donald Wyatt Detention Facility
950 High Street
Central Falls, RI 02863